UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| MITCHELL THOMPSON, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | No. 1:24-cv-00116-LEW |
| | ) | |
| TWIN RIVERS PAPER COMPANY LLC, | ) | |
| | ) | |
| | ) | |
| Defendant | ) | |

## <u>ORDER ON MOTION TO DISMISS</u>

In this action, Plaintiff Mitchell Thompson alleges that Defendant Twin Rivers Paper Company refused to hire him for a general labor job because of his disability, in violation of federal and state law. The matter is before the Court on Defendant's Motion to Dismiss (ECF No. 9).

### Background

For purposes of reviewing a motion to dismiss, I accept as true the plaintiff's well-pleaded allegations and will draw all reasonable inferences in the plaintiff's favor. Fed. R. Civ. P. 12(b)(6); *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012); *Sanchez v. Pereira–Castillo*, 590 F.3d 31, 41 (1st Cir. 2009). The allegations may also be informed by materials susceptible of judicial notice, of public record, or referenced and relied upon to support the plaintiff's cause. *Newton Covenant Church v. Great Am. Ins. Co.*, 956 F.3d 32, 35 (1st Cir. 2020).

In the fall of 2021, Mitchell Thompson applied to work for Twin Rivers Paper Company at its paper mill in Madawaska.  In his Complaint (ECF No. 1), Thompson alleges that he applied to work as a "general laborer."  Compl. ¶ 17. The advertisement for the job in fact described it as "entry level production."  Advertisement, Mot. to Dismiss Ex. A (ECF No. 9-2).  Other paperwork associated with the hiring process described the position as a "production spare."  Pre-Employment Physical Examination Form, Mot. to Dismiss Ex. B (ECF No. 9-3).  Thompson was offered the position subject to his taking a physical examination which is required as part of Twin Rivers hiring process.

Thompson has poor eyesight.  His best vision after correction is 20/70, meaning a person with keen eyesight sees at 70 feet what Thompson sees at 20 feet.[1]  Thompson's near vision is not indicated, though there is an indication it is blurred.

When an applicant has a limitation in the ability to see, the physical examination includes a vision test.  For Thompson, Twin Rivers employed the Titmus eye exam. Thompson failed the eye exam.  Compl. ¶ 27.  In his Complaint, Thompson alleges that Twin Rivers used the Titmus eye exam to intentionally screen Thompson out of employment.  However, after Thompson failed that test, Twin Rivers instructed him to see his optometrist to determine whether his vision could be improved with glasses.  Decl. of Brent Stoliker, O.D. ¶ 4.[2]  Dr. Stoliker informed Twin Rivers that Thompson's best vision

---

[1] According to his optometrist, due to his condition, Thompson's brain may disregard visual input from his right eye.  Decl. of Brent Stoliker, O.D. ¶ 3 (ECF No. 9-4).  This may impact Thompson's depth perception as well as his visual acuity.  However, Thompson is able to see out of his right eye and his visual acuity in his right eye is measured at 20/80.

[2] Plaintiff introduced the Stoliker declaration during proceedings before the Maine Human Rights Commission.

with correction is 20/70.  Although asked to opine whether Thompson could safely perform work inside the mill, Dr. Stoliker declined to do so because he was not provided with any description of what the work required or the conditions at the mill.  *Id.*  ¶¶ 4–6.  Ultimately, Twin Rivers declined to employ Thompson because of his disability.

## Discussion

In support of its Motion to Dismiss, Twin Rivers argues that Thompson has failed to state a claim for relief under the Americans with Disabilities Act (ADA) or the Maine Human Rights Act (MHRA) because he has not alleged facts to show that he is actually qualified to perform the essential functions of a production worker in its paper mill, which includes performing those functions without endangering himself or others.  *See E.E.O.C. v. Amego, Inc.*, 110 F.3d 135, 144 (1st Cir. 1997).  In opposition, Thompson argues that his allegations are sufficient to support a plausible inference of liability because he "met the qualifications for the position, was able to perform the essential job functions, was offered the position, and passed the pre-placement medical examination."[3]  Response at 10.  He also argues that Twin Rivers should have to bear the burden of proving he is a safety risk as an affirmative defense, citing 46 U.S.C. § 12112(b)(6).  Response at 11.

---

[3] Thompson's contentions about what he has shown so far are not entirely accurate.  He alleges the ability to perform the advertised requirements, but Twin Rivers did not itemize that he had to have good vision, and he alleges that he was hired and passed the medical examination, but the person who administered the examination noted that he failed the eye exam.  Physical Examination Form (ECF No. 9-3).  The form concludes with a checkbox entry of "no limiting conditions for this job position," but that checkbox is immediately followed by a written entry of "no limiting conditions noted other than vision."  *Id.*

To avoid dismissal, Thompson's Complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Rule 8 standard is informed by a plausibility standard. The short and plain statement must "plausibly narrate a claim for relief." *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012). Plausibility means "something more than merely possible," *id.*, or "merely consistent with a defendant's liability," *Ocasio–Hernández v. Fortuno-Burset*, 640 F.3d at 11 (1st Cir. 2011) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "If the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal." *SEC v. Tambone*, 597 F.3d 436, 442 (1st Cir. 2010) (en banc).

To state a claim of disability discrimination, Thompson must allege facts that show not only that he has a disability and that he was not hired (both facts appear to be uncontested), but also that he was "qualified to perform the essential functions of the job, with or without reasonable accommodation." *Oliveras-Sifre v. Puerto Rico Dept. of Health*, 214 F.3d 23, 25 (1st Cir. 2000) (ADA); *Benson v. Wal-Mart Stores E., L.P.*, 14 F.4th 13, 26 (1st Cir. 2021) (MHRA). Although it is not required that Thompson set forth "a detailed evidentiary proffer in a complaint," *Rodríguez-Reyes v. Molina-Rodríguez*, 711 F.3d 49, 54 (1st Cir. 2013), he "must plead enough facts to make entitlement to relief plausible in light of the evidentiary standard that will pertain at trial," *id.* (reversing dismissal). *See also Germanowski v. Harris*, 854 F.3d 68, 72 (1st Cir. 2017) (affirming dismissal).

Based on my review of the Complaint (ECF No. 1) and materials referenced therein and susceptible to judicial notice, I find that Thompson has stated a plausible claim. In particular, it appears from the facts alleged that neither a Twin Rivers decision maker nor Thompson's optometrist were confident that Thompson's vision would preclude his safe performance of the job in question. Though this is far from a strong showing and the question is close, I find that Thompson's claim is plausible because it is a modicum better, and not much more, than purely conjectural. Furthermore, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (quoting *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 515 (2002)).

I do not at this time resolve the questions raised by Thompson concerning allocation of burdens related to safety concerns or whether his 42 U.S.C. § 12112(b)(6) claim should be treated differently. However, it appears likely that Thompson will need to demonstrate that he is a qualified individual as part of his case in chief, and that this will include showing his ability to perform the job functions without placing himself or others in jeopardy. *See Austin v. Mainely Constr. Rentals, LLC*, No. 2:20-cv-00182-NT, 2022 WL 539311, at *7 (D. Me. Feb. 23, 2022) ("[W]here 'essential job functions necessarily implicate the safety of others,' the issue of safety may be treated as part of the employee's *prima facie* showing of qualification, rather than part of an affirmative defense for which the employer bears the burden of proof." (quoting *Amego*, *Inc*., 110 F.3d at 144); *Sturgill v. Norfolk S. Ry. Co.*, 391 F. Supp. 3d 598, 609 (E.D. Va. 2019) ("In [§ 12112(b)(6)] cases, the individual

challenging the qualification policy alleges that despite the challenged policy, he or she is a 'qualified individual' under the ADA.").

## Conclusion

For the reasons set forth above, Defendant's Motion to Dismiss (ECF No. 9) is DENIED.

SO ORDERED.

Dated this 12th day of February, 2025.


/s/ Lance E. Walker
Chief U.S. District Judge